Good morning. May it please the court and counsel, it is inconceivable that the Secretary of Defense, the Secretary of the Navy, would design a system for discharging sailors even after 16 years of dedicated service, a system that's intentionally designed to be fair and adversarial, a system that wants to be so fair that it guarantees a respondent counsel. It's inconceivable that such a system would not expect, actually require, that counsel to do his job properly, to be effective. We know that that's not the intent of the Secretary of Defense and the Secretary of the Navy, and how do we know that? We know that because there's a JAG instruction that applies to all Navy lawyers practicing under the JAG cognizance, and that JAG instruction says that judge advocates practicing... Excuse me, let me ask you one question, please. In your view, in order to decide this case, is it necessary for us to resolve this question about whether the Strickland standard applies or whether the competent counsel standard applies or qualified counsel? Can we just look at the decision of the board and determine whether it passes muster under our standard review without deciding that question about what standard, strictly speaking, is correct? Your Honor, I don't think so. I think it would be more appropriate for this court to state what standard it's applying, and I think that's one of the problems with the lower court's opinion in this case, because the lower court said the standard is qualified counsel, but then went on to do... And by the way, qualified counsel has nothing to do with the performance or conduct of the counsel. Qualified counsel just means he's certified under Article 23. But the BCNR looked at it, and please correct me if I'm wrong, through an effective counsel, effective assistance of counsel standard, didn't it? Yes, sir. BCNR did. Couldn't we just look at that and say whether or not it correctly decided it under that standard? I mean, that's what the Fifth Circuit did in that Williams-Wynn case, isn't it? Yes, sir, and we would be delighted if the court would evaluate counsel's performance under Strickland or some analogous standard that actually looks at what he did, not only what he did, but what he didn't do, to determine whether he provided the due process, the effective assistance that Mr. Helferty was entitled to. So, do you technically have to make a new rule? No, I don't think you do. I think because BCNR applied Strickland, the lower court should have applied Strickland, and this court should apply Strickland. Does that answer your question, Your Honor? Yeah, I mean, you're kind of saying you want us to apply Strickland, and, okay. I do, and actually, I believe that counsel's duties, thank you, sir, counsel's duties actually spring from three different sources, independent but kind of interrelated sources. They spring from counsel's ethical duties under a state bar rule. It springs from the regulatory duty that's set forth by the JAG instruction that says you shall be competent, you shall be eligible, and it springs from this constitutional due process right, which incorporates a Strickland-type analysis. So, all three of those sources, ethical, regulatory, and constitutional, required BCNR and the lower court and this court to evaluate what did counsel do or not do, and was that enough? And that's the problem we have with the lower court's opinion, is they said, well, he was qualified to sit in the chair, and the inquiry ends there. I don't, I mean, I don't read Judge Letow's opinion as failing to evaluate the performance of the counsel, and I also, I mean, I'm looking at the government's brief, and its conclusion, it says quite expressly that the trial court correctly determined that under the qualified counsel standard, the representation, the representation must be competent. I take that to be a performance view, and Judge Letow did evaluate the performance, and at that point, I'm struggling to think what a performance would be that would somehow satisfy one standard, but not the Strickland standard. I totally agree, Your Honor. So why does the standard matter? Well, it matters because with all due respect to Judge Letow, I don't feel like his opinion set forth precisely what standard he was applying. He says it's just qualified, which means the lawyer was certified. He's a licensed lawyer certified by the JAG. But then he goes on, which is almost like dicta, where he says, but he didn't breach any duties, but he doesn't say in the lower court opinion what those duties were. So with the Court's permission, I'd like to give you my view on what I thought those, what I think the JAG instruction and the due process clause of the Constitution require. What did the lawyer do or not do that was deficient in this case, so that it would inform the Court, whatever standard you apply, whether it's Strickland, per se, or some competence standard? Can I just ask you to focus on, the essential, as I understand it, the core of the asserted defense, maybe even the asserted defense was unintentional ingestion of some sort. Now, how was counsel supposed to put flesh on that without, and I don't think you've presented to us, any additional information about possible concrete scenarios in which that might have occurred? Great question, and the answer to that is this. Under Supreme Court precedent, Wiggins versus Smith and other cases, Crowley v. Whitley, all of the cases dealing with Strickland versus Washington, the seminal case on ineffective assistance, talk about an independent duty to investigate. Had Mr. Helferty's lawyer done any cursory investigation, with or without Mr. Helferty's participation, there's a factual dispute about that. He could have, for example, he knew where Mr. Helferty worked. He could have gone and talked to the people that worked every day with Mr. Helferty to say, did you see any aberrant behavior? Did you see any indication that he was under the influence of cocaine? Did you hear him talking about making a drug deal? Any evidence that would indicate one way or the other that there was some likelihood that Mr. Helferty knowingly, intentionally used cocaine. He didn't even do that much. He talked to one person or two people and didn't call those people as witnesses on the issue, so he didn't investigate the facts. He didn't go and look for fact witnesses. Had he been up on the law… I'm sorry, are you suggesting that maybe Mr. Helferty had a reason for why there might have been innocent ingestion and then the counsel, Spencer, was wrong in not asking the question? Well, there's a factual dispute about whether counsel asked the question, where were you, who were you with, what were you doing that would account for this? Mr. Helferty says that that discussion never took place. Counsel's declarations state that it took place. But it's irrelevant, in my view, because counsel had an independent duty to investigate. So I don't know how it got into my system. This is not a case where somebody spiked my drink, she's willing to say she did it. But he doesn't have to prove that he didn't do it. The government has to prove that he was a knowing and conscious use, and it was the recorder, the government's lawyer, who pointed out to the members, not even the defense lawyer, who said, you know, this is such a very low metabolite level, microscopic. He may not have even known that he ingested it. We don't have to show where it came from. The government has to show that it was a knowing and conscious, intentional use. And my point is that had counsel done some investigation and talked to witnesses who could have given testimony that, well, they didn't see him under the influence, so maybe if he somehow innocently ingested this, we don't know how, he didn't even know it. And that's why the level was so low. He could have talked to a lab expert to talk about mistakes that might have taken place in the lab that would account for a false reading. He didn't even talk to an expert. In fact, he submitted a document that says, oh, by the way, the lab committed error in the past, but then in his argument, he tells the members there was no lab error in this case. He can't have it both ways. So those are some things. So he didn't find fact witnesses. He also didn't find character witnesses, because as you can see from the character statements that have now been provided, these people were all literally shocked when they heard about this, because he is not the kind of person to break the rules. He's been an honorable, dedicated sailor for over 16 years, and that is evidence that the board could consider, because it's only a presumption. Once you have a positive year analysis, it's only a presumption that the youth was knowing. That presumption can be rebutted. And the problem with this case is the defense counsel did nothing to rebut that presumption except get a polygraph. And I'll tell you, good for him, because I've been practicing criminal law for a long time, and it's not every day you get a client who can pass a polygraph. So good for him that he got that, but the problem is he stopped there. He put all of his eggs in the polygraph basket. He didn't fulfill his duty to fully investigate the facts and the law. And had he done so, that's why we believe the first prong of Strickland, the deficient performance, is satisfied. And had he done so, there's a reasonable probability that a different outcome would have resulted. And we don't have to prove, the Supreme Court says in Kyle C. Whitley, that you don't have to prove there would have been a different verdict. You just have to prove that the proceeding wasn't fair. And when you've got a sailor who served for 16 years and he adamantly denies using, and the defense lawyer does nothing but put on a polygraph in effect, nothing effective, but put on a polygraph, the sailor's relying on the legal expertise of the lawyer that the government provided to him. This is not a retained counsel that he can go sue for malpractice in civil court. The government's provided lawyer, he had ethical and constitutional duties to do a good job. Just getting him in the chair by saying he's qualified is not good enough. And so back to your question, Your Honor. I don't know that Judge Leto stated what duties he did or didn't breach. He says he didn't breach his duties, but he doesn't set out what those duties are. So I think it would be appropriate for this court to say, he had the duty to investigate, he had the duty to zealously advocate for his client, and he didn't do that. And because of that, the proceeding wasn't fair, and therefore the representation was ineffective, and he's entitled to relief. Is there some other articulation besides the Strickland standard that you would be advocating for? Has the Strickland standard been applied outside the Sixth Amendment context? Well, the Sixth Amendment per se does not apply to the civil proceeding, right. But the Fifth Amendment due process right does apply. And so my argument is we reach through the Fifth Amendment to get to the Sixth Amendment, because the Strickland standard is pretty much the only standard you could apply to evaluate counsel's performance. There's a line of cases out of the Ninth Circuit in the immigration removal area that talk about, they don't call it Strickland, but they do the same two-prong analysis. Did the lawyer do a good job, and did it make a difference when he didn't? So frankly, Your Honor, we didn't. Did the lawyer do what he was supposed to do? And our argument is the lawyer failed to adequately investigate. He failed to zealously advocate. It's pretty telling when the lower court finds out and makes a finding that the counsel for the government advocated more vigorously on Mr. Helfrich's behalf than his own lawyer did. It was the recorder who argued to the members, you know, this level's so low, he might not have even known he ingested it. By the way, members, did you know that there's lab error sometimes? It was the recorder, the government lawyer who said that, not the defense lawyer. Right, but at that point, you start to have a prejudice problem, right? So the real question is what very concrete things, information in particular, was not presented to the tribunal that might have been presented by a lawyer meeting, say, the Strickland standard of reasonable professional performance? Yes, sir. First, he would have found, co-interviewed co-workers to determine, again, as I mentioned, whether they could be fact witnesses because there's no evidence that Mr. Helfrich ever was a user of drugs or that he appeared to be on drugs. He didn't do that. He did interview these people to see if they would be character witnesses because, again, character can be one of those things that rebuts the presumption of knowing youth. He did not, and he put in the performance evaluations that are all authored and the name of the writer of that evaluation is in every evaluation. There's no evidence that he even called those people. If you look at the evaluations, they're in the joint appendix. There's some very nice comments about Mr. Helfrich and his abilities and his dedication and his character. Had counsel just called one or two of those people and said, did you know he positive? Who then would have been subject to cross-examination. Absolutely, but what could they, the cross-examination could not possibly be worse than having nobody there to speak for him. I thought there was at least the declaration of one character witness. Was it his supervisor? Yes, sir, it was, but when you look at the later declaration that he submitted for purposes of this post-board litigation, he talks about how he would have argued, first of all, the board had to decide, did the misconduct occur? Even if they find the misconduct occurred, they still could have voted to retain Mr. Helfrich in the Navy, and his lawyer didn't even ask them to do that, so in the failure to zealously advocate, that's where he fell down on the job. He said, find no misconduct because he passed the polygraph and that's it. He should have said, even if you find that the lab result is accurate and you don't believe in the polygraph, look at his character, look at his service, please retain him in the Navy. He didn't do that. He jumped from no misconduct to give him a general discharge. That was ineffective. That was a failure to zealously advocate. I think you're into your rebuttal time. We'll restore the rebuttal time. Thank you. Can I ask, just at the beginning, am I reading the sentence at page 36 of the red brief correctly in its concession that the qualified regulatory standard is a performance standard rather than just a credentialing standard? The sentence at page 36, Your Honor. The more important question is, do you agree that it is a performance standard, that in order to meet the standard, the regulatory standard of qualified counsel, the court, some tribunal, needs to examine the performance of the lawyer in the representation, not just look and see that the person has a law degree, was admitted to the bar, has maybe done this sort of thing before, but otherwise not even take a peek at how the lawyer conducted the representation in this case? In this case, Your Honor, the standard is set forth in Article 27 of the Uniform Code of Military Justice, which is qualified and certified as competent. That does not mean performance is competent. Where do you get the performance being competent? What do you mean when you said here, the trial court correctly determined that under the quality, this is the bottom of page 36 in the conclusion section, the trial court correctly determined that under the qualified counsel standard, Lieutenant Commander Spencer's representation must be competent. The representation must be competent. Right. And that's because... And the record before the BCNR supported the BCNR's decision that Lieutenant Commander Spencer provided competent, effective counsel at Mr. Helferty's administrative discharge board. It looks like you're linking the qualified counsel standard from the regs to some kind of competent performance standard in this sentence. Are we misreading this? No, you're reading it absolutely correctly. What I did not put in that was that the competency standard is set forth in the JAG instruction that goes to the rules of conduct for all judge advocates as well as civilian counsel who are practicing before the military that have to be certified. And that's why you see in the record that before the board they stand up and say, I'm certified under Article 27, which means that the judge advocate general has looked at my record and I'm a graduate of accredited law school and I've been to the appropriate training, so I'm certified as competent. But then throughout the rest of that individual's career, they have a competence component that they must maintain that is pursuant to the rules of professional conduct that applies to lawyers in the Navy, and that's set forth specifically in Rule 1 of the JAG instruction on professional competency. Let me just try to... I'm sorry, Your Honor, I don't think I... Yeah, I'm not sure whether you're trying to avoid a direct answer to the question or whether you've given one and don't think you need to repeat it, but let me just be sure. Do you agree that the actual conduct of the representation by Spencer of Mr. Helferty had to meet some standard of competence? Yes, and that's what the BCNR read as well. And where that standard comes from, we slightly disagree with the Winn Court that implied that the competency standard is the competent standard that's set forth in Article 27. That competency really is you passed your basic course as a judge advocate, so you've been competently trained. The competence is through your performance in any type of your legal representation while you're in the military is set forth in the rules of professional conduct, and that's at 1.1. In this case, though, at bottom, we would argue that, as Your Honor indicated, just like they did in the Williams v. Winn case in the Fifth Circuit, is that here you have a record review case, and therefore it was the decision of the Navy, arbitrary and capricious, not supported by substantial evidence, or contrary to law or statute. In this case, there's been no identification of any law or statute that the Navy didn't comply with. At most... Let me just ask you this. Once we agree, as I think we now have, that the substantive representation in the conduct of this case had to meet some competence standard, I'm having trouble understanding what it would be to have a representation that is competent but involved objectively unreasonable prejudicial conduct. That is, what difference there could be between the Strickland standard and a performance competence standard? Well, one is derived to the Constitution system. I'm not talking about the source of them. In practice... I'm not talking about the source of them. I'm talking about what substantive difference would there be between the two standards. In practice, I'm not aware generally are there any bright-line tests, but just as the Supreme Court stated in Strickland, as well as in other cases that have looked at this issue, there's no bright-line four-part test. It's a totality of the circumstances that they review. Whether you apply Strickland or the Competent Counsel test, the Board did that here. That's the beauty of this record, is that the Board's opinion was very fulsome. They went through all the different allegations... I do need to interrupt you. When I start talking, you do need to stop. Every circuit in the country, with the exception of the D.C. Circuit, which has decided that it hasn't decided the question, treats the bottom-line ineffective assistance question as a mixed question of law and fact, subject to de novo review. Why would that not be something we would do here? Well, two things. One is the effective assistance of counsel standard does not apply whether it's the Sixth or Fifth, and that's following this Court's case law in non-military cases like the Fifth Division. If the substance is essentially identical, why would a de novo mixed question law fact determination of competence not be appropriate as well? I don't see why in this case, especially because you're reviewing the record without deference as it is, and you're looking at legal issues de novo. In this matter, where it's based on a record review, I would assume I'd have to go back and if I'm wrong, I'd like to at least have the opportunity to brief the issue to the Court. But in this case, the record review is without deference, so you can look at everything in here. Look at the regulations that were applied. Look at the BC&R's decision. Look at the four different opinions from the Navy Personnel Command Office of Legal Counsel, as well as the Rules Committee of the Navy's Advocate General, as well as the very extensive opinion by the BC&R in this case in 2012. The BC&R, by the way, I must mention that was actually a different BC&R because it was composed primarily, not just primarily, of senior lawyers within the Office of General Counsel in the Department of the Navy. And under this standard, at best we have my friend who's representing Mr. Helfry's counsel pointing out things that they would have done differently, but that does not mean that what Lieutenant Commander Spencer did was not competent pursuant to the rules. And as the record points out here, there was four independent reviews by legal counsel as well as the rules counsel that disagreed that, in this case, Lieutenant Commander Spencer's performance fell below the standards of conduct for a defense counsel in this matter. Smith, let me ask you, what words would you use to describe what you think is the correct standard for judging Lieutenant Spencer's performance here? Just looking at his performance and his representation of Mr. Helfry. What kind of words would you use to describe the standard we should look at? I think the words, it's more of an objective standard of reasonableness under the circumstances. In other words, you would say, was his representation of Mr. Helfry reasonable under the circumstances? Yes. That's essentially strickland on the first part. And you're certainly not going to give up the prejudicial component, are you? No, and your Honor is absolutely right. When we were actually discussing this case at the department, we were saying in some ways the competency standard applied by the Navy regulation is more stringent than the strickland. What we're concerned about is by saying in an administrative setting here, the Sixth Amendment doesn't apply and therefore the strickland test doesn't apply. Moreover, I think the military is concerned because there's no right to counsel in certain circumstances. Can you go back to what you said about how in some circumstances the qualified counsel standard is stricter than the strickland standard? Like a higher expectation of performance? Is that what you mean when you say strickland? Yes, because of the definition of competency in 1.1, which is a reasonableness standard as well. But it doesn't have the prejudicial link to it. But can you drill down a little bit further and explain to me what, and compare your qualified counsel standard to the strickland standard and say strickland asks for this level and we are actually asking for this level of performance. Where is the daylight? I don't know if there's an actual hard and fast rule, and I did not mean to imply that. Because even under strickland, you have to look at each case is limited to the facts of the case. But in this case, the competency level of the judge advocates, that the standards of conduct are such that the Navy folks actually, you know, there's no prejudice component, which is a component within strickland. They're actually looking at under the circumstances was a reasonable judge advocate with that experience and that training performed in a similar manner. How many cases, raising the question of the counsel performance standard, are there, have there been, I'm trying to gauge whether it is a significant thing for us to do to declare what the standard is, even if we didn't think it made a difference in this case, or whether reviewing the particular performance here under several variants of what seems to be roughly the same standard would be adequate. I know it would be adequate for this case unless we decided that the standard made a difference, but is it doctrinally important for us to formulate the standard that will govern this kind of inquiry in the future or does this not come up very often? Well I would imagine in a criminal setting an effective assistance counsel comes up routinely. Yeah, I think Strickland is the single most cited Supreme Court case in history. As far as in an admin setting, I know that there was a couple instances in the Court of Federal Claims that applied it without any real true analysis, and obviously Williams and Bewin. It is a very unique issue. I would state, though, that at this point, though, I think Middendorf is somewhat instructive because that involved what standard of representation or even if counsel was authorized in the summary court-martial setting. In that case, the Supreme Court at least constructed saying, when analyzing whether first this was an adversarial proceeding that met to the level where the Sixth Amendment right to counsel attached, that this wasn't the case, but one of the factors they looked into was mindful that it was a military matter and because it was a military matter, they were going to defer to the process that was set forth by Congress and regulations. In this case, the regulations are fairly clear as to, well, they're clear as to what the standard is, but the standard, like a lot of regulations, are somewhat general because then you can apply those general criteria to the specific facts of the case. I think there's one thing that also... Can I just ask you about the specific point? Ms. Zimmerman said, I think, one kind of concrete thing that Lieutenant Spencer could have done that he did not do to try to persuade the The ingestion was not deliberate without providing a scenario for the unintentional ingestion would be to get witnesses from his workplace, from wherever, to say, I have never seen any that his scenario, completely unspecified scenario of unintentional ingestion is ruled out or is plausible by ruling out any reasonable possibility of deliberate ingestion. Why would that not have been a pretty important thing to do? Well, one, there's evidence in the record where Lieutenant Commander Spencer actually asked his client, at that point in time, Petty Officer Helferdy, if in fact there were any character witnesses that could support him at the hearing, and none were forthcoming. But moreover, before you get... I think the response would be, maybe one that we might disagree with, and maybe I might disagree with Lieutenant Commander Spencer's performance, but it doesn't mean it was ineffective or unreasonable, is that the first person I would ask for to be a witness as to coming up with some type of innocent ingestion theory would be the respondent himself, Petty Officer Helferdy. And Petty Officer Helferdy did not provide that testimony. So I think one could speculate that at the hearing, the board members, all senior members of the United States Navy, who, assumably, have been members of boards before, would have looked at this matter and said, it's somewhat odd that co-workers would come up and say, Helferdy would never do this, there's got to be a reason, but Helferdy doesn't make that statement himself. But again, to go back to what you were saying before, you were saying that Spencer actually did try to seek out witnesses, and then you said none were forthcoming? That's right. AR-56 of the Joint Appendix, the BCNR, addressed this exact point, and they referenced Commander Spencer's statement in the record, and the statement in the record is in, Spencer's statement is in 272, 276, as well as 282 of the record, and it goes on various years. But he talks about the alleged failure of the present the innocent ingested defense and why he did not do that. He explains why he offered a statement from the Commander versus calling the Commander in person, because, as your Honor pointed out, he would have been subject to cross-examination, and it's difficult to say that Helferdy, Petty Officer Helferdy, was a valuable member of my command, because that does not sync up with the efficiency reports that Commander Wendy enrolled in. So while, at this time, six, seven, I guess nine years after the fact, many people come forward and say, I would have done this differently, maybe I would have done this differently. The standard of review here is whether the Navy's decision was supported by substantial evidence. And in this case, looking at the fulsome, one of the most thorough opinions that the BCNR has ever written and I've ever seen, and goes through all the different allegations, looks at them, provides the report of Lieutenant Commander Spencer, and simply states, at this point, there's nothing that shows that there was a violation of statute or regulation or there wasn't substantial evidence that supported a conclusion that Mr. Helferdy's administrative discharge of the proceeding was not conducted properly. And I apologize for interrupting. No, no, no. Thank you. And if there's any other questions or if you would like additional briefing around that one issue we discussed that I wasn't prepared to answer, I would gladly do that. Okay. I don't think we need any additional briefing. Thank you, sir. Any conclusions you'd like to add, Mr. Spencer? No. Thank you. Ms. Zimmerman, you have your four minutes. Thank you, Mr. Chairman. Well, let's see. We agree with the court that this is a de novo review. Absolutely. Just because the BCNR applied Strickland and said Strickland was satisfied or that it was confident or professional, whatever standard applies, that does not bind this court. This court should and can and should apply a de novo review. Ms. Zimmerman, what do you think about Mr. Mickles offering a reasonable performance standard? Was it reasonable performance under the circumstances, if I'm misquoting him? Forgive me, but I think that's what he said. That's kind of related to the first prong of Strickland, which says, was his degree of diligence reasonable compared objectively with other practitioners in the area? That's just prong one of Strickland. So I agree with that. But are we much different from Strickland here, although Mr. Mickles says there's not the prejudice component in the JAG guidelines, but are we really much different from Strickland in terms of the standard that we're sort of looking for? That's correct, Your Honor. And I wrote that in my concurrent counsel for the government argument that we don't even need to show prejudice here to show a violation. The Navy didn't follow its own regulations because the Navy regulations required the lawyer to be competent, and he wasn't. And just a word about those advisory opinions. First of all, they're not before the court. The BCNR opinion did not incorporate those advisory opinions into its decision. However, let me address the merits of them because they're erroneous on their face. They contain numerous mistakes. They are not worthy of any credibility whatsoever. They're conclusory. They focus on what the lawyer did and not on what he didn't do. And when I say they contain errors, just three little examples. They say there's no liberty interest here. Well, we all know that the case law forecloses that. Clearly, there's a liberty interest here. Secondly, it says that... Do they mean that in the normal due process sense or in the sense in which we spoke about that in the Pitts case that says if there's no physical liberty interest, due process doesn't require counsel? And you combine that with, was it Coleman against Tompkins, and say if there's no right to counsel, there's no right to competence? I think that the advisory opinion says there's no liberty interest, so he doesn't have the right to effective assistance of counsel. There's no due process right at all. Because we used that same language about liberty interest in Pitts and then restricted it to physical liberty, which is not the case. That's right. Pitts says if it's only property, we don't get there. And in Pitts, it was a retained lawyer. And in Pitts' opinion, it implies that had it been a liberty interest involved, you would have required effective assistance of counsel. But I digress. So the advisory opinion is erroneous. It says misstatements of fact, for example, that Mr. Hilferty, if you read the transcript that's in the JA, the defense counsel waives the reading of the rights. The board president didn't read any rights to Mr. Hilferty. The major thing is saying that the counsel argued for retention. He did not. If you read the transcript from the argument, he just argued find no misconduct. And if you find misconduct, give him a general discharge. He never argues for retention. And that's a huge error, a huge error that might have made a difference. A word about Wynne. First of all, Wynne is not binding on this court. Number two, Wynne did apply Strickland. Number three, Fifth Amendment is not mentioned in Wynne. It only talks about whether there's a Sixth Amendment right or not. So we're not contesting that. And fourth, and maybe most interestingly, the sole language that the government cedes upon from the Wynne opinion that talks about a difference between qualified and effective is in footnote six. If you read footnote six carefully, you'll see it relies upon a Fifth Circuit case out of Texas having to do with habeas. It's very complicated and technical. But the bottom line is the case that I provided to you in my supplemental letter of authority, Trevino v. Thaler, says that case doesn't need good law anymore. So the language that the government uses out of Wynne versus Williams versus Wynne is not good law anymore in Texas or anywhere else. So Wynne should have no effect on this court's opinion, in my respectful opinion. If you could wrap up now, please. Yes, sir. So under the APA standards, we ask you to find that the BCNR's opinion or conclusions, its action was arbitrary, capricious, not supported by substantial evidence and contrary to law. And you know, Mr. Helferty in 1989 signed the dotted line offering to give his life if required to serve his country. And every time his contract came up for renewal, he signed it again. And he deserved more than what he got here. He relied. He's a layperson. He relied on the lawyer that the government provided to him. And his lawyer failed him. And there's no other recourse. Every other attempt he's made to rectify the situation has been unsuccessful. Really, this court is the last avenue for him to get redress for this wrong. And it's not meant as a personal attack on the counsel. We're all human. We make mistakes. But that doesn't mean that a 16-year dedicated Thaler has to pay the price for that when the mistakes rise to this level. Thank you, Ms. Emmer. Thank you, gentlemen. The case is submitted.